UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**05  10544 JLT**

FIRST, LLC, a Delaware Limited Liability Company,

    Plaintiff,

    v.

TIMOTHY MCARTHUR,

    Defendant.

Civil Action No.

RECEIPT # 62945
AMOUNT $ 250.00
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. M.P.
DATE 3/22/05

VERIFIED COMPLAINT

MAGISTRATE JUDGE ___

FIRST, LLC a/k/a First-Racing.Net ("FIRST") alleges for its complaint against Timothy McArthur ("McArthur") as follows:

<u>INTRODUCTION</u>

1.    In this action FIRST asks this Court to, among other things, enjoin McArthur's malicious distribution over the Internet of highly confidential source code or object code for FIRST's copyrighted computer game, NASCAR® Racing 2003 Season ("NASCAR® 2003").[1]  McArthur's threat to do so, made by posting to an Internet bulletin board on or about March 19, 2005, is his latest attempt to extort FIRST into abandoning its attempts to discourage McArthur and others from publishing over the Internet "hacked" derivative versions of NASCAR® 2003 in violation of FIRST's copyrights and United States law.[2]

2.    Indeed, as alleged in more detail below, McArthur and third parties with

---

[1]    "Source code is the language in which a computer program is written that humans can understand.  Object code is the machine language of a computer program . . . .  A computer application program is provided in object code so that it can be used but cannot be understood by [most] humans."  <u>Technical, Inc. v. ALLPAX Products</u>, 1990 WL 41924 at *4 n.5 (E.D. La. March 28, 1990) (injunction against threatened use or distribution of source code).

[2]    A copy of McArthur's posting is attached as Exhibit A to the Affidavit of Irwin B. Schwartz in Support of Ex Parte Application For Temporary Restraining Order and Expedited Discovery ("Schwartz Aff.") submitted herein.

whom he worked, reverse engineered NASCAR® 2003 to develop a software application that automatically creates derivative versions of NASCAR® 2003 (the "Hack Tool"). Then McArthur included that Hack Tool as part of a free download "executable" program published on his Internet website to help untold numbers to create McArthur's own derivative version of NASCAR® 2003. According to McArthur himself, "tens of thousands" have downloaded files from his website to create unlicensed derivative versions of NASCAR® 2003.

3.      McArthur's threatened publication of FIRST's highly confidential and copyrighted source code is ample ground for this Court to issue an injunction. When previously presented with such behavior, this Court enjoined the Internet publication of "hacking" computer applications designed to circumvent computer software protections in abuse of plaintiff's copyrights. See Microsystems Software, Inc. v. Scandinavia Online AB, Civ. Action No. 00-10488-EFH (D. Mass. Mar. 17, 2000) (TRO against distribution over Internet of "cphack.exe" created by reverse engineering of "CyberPatrol" software). Likewise, other courts have made short work of computer hackers who invade software publishers' copyrights to distribute over the Internet an application to "improve" software games. See Davidson & Assoc., Inc. v. Internet Gateway, Inc., 334 F. Supp. 2d 1164, 1181 (E.D. Mo. 2004) (finding on identical license terms as here that defendants waived "fair use" defense and violated copyright and Digital Millennium Copyright Act protections).

4.      Beginning in February 2005, FIRST asked McArthur and others to stop creating and publishing over the Internet derivative versions of NASCAR® 2003. By early March 2005, many such persons had agreed to do so. McArthur, however,

2

refused to acknowledge FIRST's exclusive rights to publish derivative versions of NASCAR® 2003 or that he had violated the applicable license prohibitions against reverse engineering NASCAR® 2003. Indeed, to the degree his threats are to publish the NASCAR® 2003 source code, it demonstrates that he violated the license restrictions against de-compiling FIRST's software.[3] Accordingly, FIRST brings this action for emergency, preliminary and permanent injunctive relief against McArthur's violations of the Copyright Act, 17 U.S.C. § 501.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

6.    Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1400(a) because FIRST is located here and McArthur's violation and threatened violation of FIRST's copyrights is knowingly causing injury here. Indeed, McArthur is a former employee of FIRST's predecessor in interest, which was based in Massachusetts, and McArthur engaged in negotiations by telephone and electronic mail with FIRST and its counsel with full knowledge that McArthur was communicating into Massachusetts.

## THE PARTIES

7.    Plaintiff FIRST is a corporation limited liability company organized and existing under the laws of the state of Delaware, with a principal place of business in Bedford, Massachusetts. FIRST is the owner of NASCAR® 2003, which is the industry-leading car racing simulation game software. FIRST's president is David Kaemmer

---

[3]    Human readable source code is translated into machine readable object code though compiling and assembly. Williams v. Arndt, 626 F. Supp. 571, 577 (D. Mass. 1985) (Mazzone, J.). Conversely, object code is converted into human readable source code through de-compiling or dis-assembly.

("Kaemmer").

8.      On information and belief McArthur resides in Concord, California.  On

information and belief, McArthur developed a software application that copies

NASCAR® 2003 into the user's computer, modifies NASCAR® 2003 using the Hack

Tool and then permits the user to save a copy of that derivative version of NASCAR®

2003 to his or her computer.  Upon information and belief, McArthur also published on

the Internet a derivative version of NASCAR® 2003.

FIRST'S COPYRIGHTS

9.      FIRST is the owner of all the intellectual property rights in NASCAR®

2003, including all copyrights whether registered or unregistered.  NASCAR® 2003 is a

derivative work of NASCAR® Racing 2002 Season ("NASCAR® 2002"), which is

registered with the United States Copyright Office under number PA-1-038-304.

FIRST's copyright registration of NASCAR® 2003 is pending.  Copies of the certificate

of registration of NASCAR® 2002 and the copyright registration application for

NASCAR® 2003, which is pending, are attached hereto as Exhibit A.  Excerpts of the

Assignment Agreement by which FIRST obtained the NASCAR® 2003 copyrights are

attached hereto as Exhibit B.

10.     The registration is in full force and effect and covers nearly all aspects of

FIRST's game as it is distributed in the marketplace, including, without limitation, (a) all

of the human and machine readable computer code and any other data distributed on

CD-ROM with each game, (b) all graphical and textual elements of the screens that

appear in each game when the same is executed on a personal computer, (c) all

graphical and textual elements of manuals and other documents distributed with the

4

games, and (d) all motion picture and sound recordings, and other audio visual elements.

NASCAR® 2003

11.    NASCAR® 2003 was developed by FIRST's predecessor-in-interest, Papyrus Design Group, Inc. ("Papyrus"), and released by Papyrus and its parent company Sierra On-Line, Inc. ("Sierra") in February 2003. Kaemmer is a founder of Papyrus and, until May 2004, was an employee of Papyrus.

12.    Papyrus and Kaemmer developed NASCAR® 2003 through tremendous effort and at great expense. NASCAR® 2003's game designers, artists, producers and programmers strove to create a software game that appealed to a large number of players and maintain the interest of those players for many years.

13.    NASCAR® 2003 was sold on CD-ROMS for use on personal computers. NASCAR® 2003 may be played by a single player, or with other players through a local network, directly between two computers connected by cables or modem, or over the Internet.

14.    NASCAR® 2003 is widely regarded as the most realistic computer car racing simulation ever created and numerous NASCAR drivers have used it as a training tool. NASCAR® 2002 and NASCAR® 2003 respectively won the gamespy.com Racing Simulation of the Year award.

15.    In early May 2004, Papyrus ceased operations. Papyrus and Sierra sold their copyrights in the NASCAR® 2003 software to FIRST on May 28, 2004.

5

## THE LICENSE AGREEMENT

16.    Upon installation of NASCAR® 2003 on a user's computer, the software presents the user with an End User License Agreement ("EULA"). The user is asked to accept or reject the license terms:

> do you accept all the terms of the preceding license agreement? If you choose No, the setup will close. To install NASCAR Racing 2003 Season, you must accept this agreement.

The user then may choose, "back", "yes," or "no". The program will only install on the user's computer if the user elects "yes." If the user does not so accept the EULA, NASCAR® 2003 will not install on the computer and it may not be used. A true and correct copy of the NASCAR® 2003 EULA is attached as Exhibit C.

17.    If accepted by a user, the EULA permits the user to install NASCAR® 2003 on a home, portable or business computer, but only permits use of the single copy of game software in single player or multi-player mode. Exhibit C, ¶ 1.

18.    The EULA explicitly provides that the user may not use NASCAR® 2003 to observe the machine readable software code or otherwise reverse engineer the software:

> 3. Responsibilities of End User.
>
> A. Subject to the Grant of License hereinabove, you may not, in whole or in part, copy, photocopy, reproduce, translate, reverse engineer, derive source code, modify, disassemble, decompile, create derivative works based on the Program. . . .

(Emphasis added).

19.    On information and belief, McArthur installed the NASCAR® 2003 game

6

on a computer and accepted the NASCAR® 2003 EULA.[4]

NASCAR® 2003'S SECURITY MEASURES

20.     NASCAR® 2003 includes an application called Securom to protect the

software from piracy.  In effect, Securom creates a lock and key that only allows the

user to run NASCAR® 2003 if the NASCAR® 2003 CD-ROM is in the computer's disc

drive.  This application protects against piracy by seeking to prevent the use of illicit

copies or altered versions of the software.

DEVELOPMENT OF THE HACK TOOL

21.     Among other things, NASCAR® 2003 contains executable files, which are

denominated by the suffix "exe".  An executable file contains both instructions to the

computer in the form of machine code and data upon which some of those instructions

operate.  Upon installation of NASCAR® 2003, NR2003.exe is installed on the user's

computer hard drive.

22.     NR2003.exe contains machine-readable software code that implements

many complex physics formulas.  NR2003.exe also contains data that is run through

these physics formulas.  These physics formulas are at the core of the creative

expression that is NASCAR® 2003 and it is a large part of the creative value manifested

in the software code.  With each previous new release of the NASCAR® series,

Papyrus programmers improved the physics formulas and changed the data to make

the simulation more realistic and more exciting for the user.

23.     This physics formula data is part of the NR2003.exe file and is stored at

fixed locations within that computer file.  Each time the NASCAR® 2003 program is run,

[4] To the extent McArthur did not accept the EULA or otherwise obtained and used a pirated copy of
NASCAR® 2003, he did so in violation of FIRST's copyrights by making unlicensed use of the software.

the physics formula data values are installed into the same locations in the computer's electronic memory.

24.     Upon information and belief, through explicitly prohibited reverse engineering either the NR2003.exe file and/or using tools that examine the computer's memory as NR2003.exe is running, McArthur and/or third parties located the physics formula data in NR2003.exe file and determined the meaning.

25.     Using the information illicitly acquired through such reverse engineering, McArthur and/or third parties developed the Hack Tool, which is a computer program that identifies and locates within NR2003.exe of the physics formula data, extracts this proprietary data from NR2003.exe, modifies the data, reads the modified data back into NR.2003.exe from the disk, and then overwrites NR2003.exe's data with the modified data.

## MCARTHUR'S DISTRIBUTION OF HIS OWN NASCAR® 2003 MODIFICATION TOOL

26.     Upon information and belief, McArthur used the Hack Tool to manipulate the data in the NR2003.exe physics model to develop derivative versions of NASCAR® 2003 that contained different cars and racing tracks.

27.     In order to propagate his own modified version of NASCAR® 2003, McArthur created and published from his Internet website for the public to download an executable application called GTS_Series_v2.0.exe ("GTS.exe"). The GTS.exe copies NR2003.exe (contained within NASCAR ® 2003), modifies the physics models, and allows the user to save the modified version as "NR2003_GTS_Touring_Series_v2.exe" ("NR2003_GTS.exe"). Thereafter, if the user runs NR2003_GTS.exe, it is an unlicensed derivative of NASCAR® 2003 that is more than 99 percent original

8

NR2003.exe code and less than one percent modified code.

28.    NR2003_GTS.exe's operation is dependent upon illegally copying NASCAR® 2003.

29.    Based on FIRST's observations of McArthur's website, McArthur allowed Internet visitors to download and install the GTS.exe to the visitor's computer.

30.    McArthur's download instructions advise that the GTS.exe causes the user to make a copy of the NR2003.exe, which violates the EULA.  In fact, McArthur warns that: "The user of this software takes all responsibility of creating a copy of the Nascar Racing 2003 Season executable file and the changes made to the file." A copy of the instructions for use of GTS.exe is attached hereto as Exhibit D.

31.    As a matter for software operation logic, McArthur illicitly copied the NR2003.exe when he created GTS.exe and every time he ran GTS.exe.  Further, every time a visitor to McArthur's website downloads and runs GTS.exe, that user makes a copy of the NR2003.exe which is then modified and saved as NR2003_GTS.exe.

32.    Based on McArthur's own March 16, 2005 Internet bulletin board posting, there is the potential that GTS.exe will be downloaded by the thousands:

> I know that my little thingies have been downloaded in the thousands, and my N3 [prior version of NASCAR® 2003] tracks were downloaded in the tens-of-thousands (and still going I might add), and I dont[sic] doubt at all that TPTCC and PWF mods were downloaded in the tens-of-thousands or more.

A copy of this posting is attached to the Schwartz Aff. as Exhibit B.

## FIRST'S ATTEMPTS TO RESOLVE ITS DISPUTE WITH MCARTHUR

33.    In February 2005, FIRST learned of the Hack Tool's existence.  FIRST then informally contacted those it believed were responsible for the Hack Tool's creation

to ask that they cease using it to create derivative versions of NASCAR® 2003 in violation of FIRST's copyrights.

34.    Upon information and belief, some individuals who obtained the Hack Tool voluntarily complied with FIRST's informal requests.

35.    On February 28, 2005, McArthur expressed on a number of Internet message board forums that he disagreed with FIRST's positions and he also released a new version of his GTS.exe on his website.

36.    On March 3, 2005, Kaemmer posted a letter to the "community" on FIRST's website that explained FIRST's position on the use of the Hack Tool.  In that letter, Kaemmer advised the community that FIRST intended to take legal action against anyone who violated FIRST's intellectual property rights.

37.    Evidently, McArthur took offense that Kaemmer referred to the modifications to the NR2003.exe as "hacked executables," and the tools they used as "tools intended to hack our executables." McArthur began referring to FIRST in his Internet postings as "FIRST.Raping.net."

38.    On March 4, 2005, Kaemmer sent an email to McArthur (and others) requesting that he remove any and all content posted on the Internet that infringes on FIRST's copyrights or that violates the NASCAR® 2003 EULA.

39.    On March 7, 2005, FIRST's corporate counsel sent McArthur a cease and desist letter relating to GTS.exe and other programs like it as well as McArthur's use of the Hack Tool.  Between March 7, 2005 and March 16, 2005, counsel for FIRST unsuccessfully attempted to resolve the dispute between FIRST and McArthur.  Those negotiations led to McArthur's "temporary" removal of the GTS.exe from his website, but

his refusal, among other things, to acknowledge FIRST's ownership in the derivative versions of NASCAR® 2003 created by McArthur's executable, or that the use of that executable caused a violation of the EULA.

40.    While FIRST pondered its options, on March 19, 2005 McArthur posted on an Internet bulletin board his version of the history of his negotiations with FIRST and stated "The TC and GTS physics installers may very well be back online soon if First does not respond." In the posting McArthur threatened to "publish" FIRST's code:

> 7) **1st Amendment Rights allow me to publish the code of "unsecure"** (there is no encryption of the NR2003.exe file), **and previously "public domain" files** (NR2003.exe files has been publicly altered for over 1 year now). *(Court ruling in the DVD-CCC v. Andrew Brunner, amongst other cases, confirms this).*

(Emphasis in original).  A copy of this posting is attached to Schwartz Aff. As Exhibit A.

## THE NEED FOR INJUNCTIVE RELIEF

41.    NASCAR® 2003 object code is protected by copyright law and its source code is a highly confidential trade secret protected by the EULA and numerous other efforts by FIRST and its predecessors-in-interest to prevent its dissemination. McArthur's publication and distribution of the NASCAR® 2003 object code and source code would cause FIRST immediate, irreparable and incalculable injury.

42.    As demonstrated by McArthur's March 19, 2005 Internet posting, he is aware of FIRST's copyrights in NASCAR® 2003 and his posting of the source code or object code therefore would be in knowing and willful violation of such rights.

43.    A Temporary Restraining Order, and preliminary and permanent injunctive relief is necessary to protect FIRST's registered copyrights and to protect it against both actual and presumed irreparable harm.

11

## CLAIM FOR RELIEF

### COUNT I
(Copyright Infringement under the Copyright Act § 501(a))

44.    FIRST realleges and incorporates by this reference the allegations contained in paragraphs 1 through 43 of this Complaint.

45.    FIRST is the assignee of the registered copyright in NASCAR® 2002 and its derivative work, NASCAR® 2003.

46.    McArthur's actions and threats constitute direct infringement of FIRST's exclusive right to reproduce and distribute copies of its copyrighted works.

47.    McArthur's actions constitute a direct infringement of FIRST's exclusive right to prepare derivative works based upon its copyrighted works.

48.    McArthur's actions constitute a direct infringement of FIRST's exclusive rights under copyright by contributing to the infringing activity of users so substantially as to be directly liable for the end-user's infringing activity.

49.    McArthur's actions constitute contributory infringement of FIRST's exclusive rights under copyright because McArthur knew or should have known that his acts would induce, cause or materially contribute to the infringement by third parties of FIRST's exclusive rights under copyright.

50.    McArthur's actions were a knowing, intentional and deliberate violation of FIRST's copyrights.

51.    As a result of McArthur's infringements, FIRST has suffered and continues to suffer damages and irreparable injury.

PRAYERS FOR RELIEF

WHEREFORE, FIRST respectfully requests that this Court:

A.    Issue a temporary restraining order enjoining McArthur and his agents and affiliates from publishing the source code or object code for NASCAR® 2003 or any derivative works thereof;

B.    Issue preliminary and permanent injunctions enjoining McArthur and his agents and affiliates from

(i)    Infringing FIRST's copyrights; and

(ii)    Circumventing FIRST's copyright protection systems and distributing circumvention technology;

C.    Requiring McArthur to deliver to FIRST all copies of material in his possession that infringe or violate any of FIRST's rights;

D.    Enter judgment in favor of FIRST on Counts I and II;

E.    Impose penalties for willful violation of the copyright laws; and

F.    Order such further relief as the Court deems just and proper.

DATED: March 21, 2005

Respectfully submitted,

First, LLC,

By its attorneys,

Irwin B. Schwartz BBO #548763
Petrie Schwartz LLP
500 Boylston Street
Suite 1860
Boston, Massachusetts 02116
(617) 421-1800
(617) 421-1810 (fax)

13

## VERIFICATION

David Kaemmer hereby states:

1.    I am President and Chief Executive Officer of FIRST, LLC

2.    I have read the foregoing verified complaint, which I declare to be true and correct to the best of my knowledge, information and belief.

SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY UNDER THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS AND THE UNITED STATES OF AMERICA.

Executed on March 22, 2005 at Bedford, Massachusetts.

David Kaemmer

14

# CERTIFICATE OF REGISTRATION



**OFFICIAL SEAL**

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
*United States of America*

**FORM PA**
For a Work of the Performing Arts
UNITED STATES COPYRIGHT OFFICE

REGIS

**PA 1-038-304**
#PA0001038304#

EFFECTIVE DATE OF REGISTRATION

| 2 | 19 | 02 |
|---|----|-----|
| Month | Day | Year |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

---

**TITLE OF THIS WORK ▼**

NASCAR RACING 2002 SEASON

**PREVIOUS OR ALTERNATIVE TITLES ▼**

NASCAR RACING; NASCAR RACING 2; NASCAR RACING 3; NASCAR RACING 4

**NATURE OF THIS WORK ▼** See instructions

Audiovisual work

---

**2**

**NAME OF AUTHOR ▼**

Sierra Entertainment, Inc.

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

**a**

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.S.A.
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Entire computer program, including audio-visual displays, user manual and text and artwork on container

**b**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**

**a**
**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED**
2002
◀ Year
This information must be given in all cases.

**b**
**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▶ February    Day ▶ 15    Year ▶ 2002
United States of America
◀ Nation

---

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Sierra Entertainment, Inc.
3060 139th Avenue SE, #500
Bellevue, WA 98005

See instructions before completing this space.

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

**APPLICATION RECEIVED**
FEB 19 2002

**ONE DEPOSIT RECEIVED**
FEB 13 2002

**TWO DEPOSITS RECEIVED**

**FUNDS RECEIVED**

DO NOT WRITE HERE OFFICE USE ONLY

**EXHIBIT A**

• Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.
• Sign the form at line 8.

**DO NOT WRITE HERE**
Page 1 of 2 pages

| EXAMINED BY | | FORM PA |
|---|---|---|
| CHECKED BY | | |
| | CORRESPONDENCE ☐ Yes | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☑ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼ If your answer is "no," go to space 7.

**a.** ☐ This is the first published edition of a work previously registered in unpublished form.

**b.** ☐ This is the first application submitted by this author as copyright claimant.

**c.** ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼      Year of Registration ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼     **a**

This work is based on, but significantly changed from, the original version entitled NASCAR RACING and it incorporates material from NASCAR RACING 2, NASCAR RACING 3 and NASCAR RACING 4.

See instructions before completing this space.

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼     **b**

New and revised computer program and audiovisual material.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name** ▼            Account Number ▼     **a**

THOMSON & THOMSON Ltd.
DA    052794

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼     **b**

Ronald A. Crawford
Sierra Entertainment, Inc.
3060 139th Ave. SE, #500
Bellevue, WA 98005

Area code and daytime telephone number ▶ ( 425 ) 638-5166       Fax number ▶ ( 425 ) 649-4919
Email ▶ ron.crawford@sierra.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of Sierra Entertainment, Inc.
      Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Eric V. Roeder, Vice President and Group Counsel       Date ▶ Feb. 15, 2002

Handwritten signature (X) ▼

X

| Certificate will be mailed in window envelope to this address: | Name ▼ |
|---|---|
| | Sierra Entertainment, Inc. Attn: Ron A. Crawford |
| | Number/Street/Apt ▼ |
| | 3060 139th Ave. SE, #500 |
| | City/State/ZIP ▼ |
| | Bellevue WA 98005 |

**YOU MUST**
• Complete all necessary spaces
• Sign your application in space 8
**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material
**MAIL TO**
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

As of July 1, 1999, the filing fee for Form PA is $30.

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.
June 1999—×, 0,000    ♻ PRINTED ON RECYCLED PAPER    ☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/68

EXHIBIT B

## ASSIGNMENT AGREEMENT

This Assignment Agreement (this "**Agreement**") is effective as of May 28, 2004 (the "**Effective Date**") and is between Papyrus Design Group, Inc., a Massachusetts corporation ("**Assignor**"), Sierra On-Line Inc., a Delaware corporation and the parent of Assignor (the "**Parent**") (each a "**Seller**" and collectively, the "**Sellers**"), FIRST, L.L.C., a Delaware limited liability company ("**Assignee**"), and REDACTED a Delaware corporation, and a member of Assignee ("**Assignee Member**") (each a "**Purchaser**" and, collectively, the "**Purchasers**").

1. **Definitions.**

REDACTED

e.    "**Game**" means the PC game NASCAR Racing 2003 Season.

f.    "**Game IP**" means all intellectual property rights in the Game Technology, including all copyrights in the Game Technology, whether registered or unregistered.

g.    "**Game Technology**" means the PC-based racing simulation engine and related tools used in the Game, together with all patches and bug fixes made as of the Effective Date, and all related (i) data, text, compiler command files, build scripts, object libraries, scripts relating to the operation and maintenance thereof, application programming interfaces (API), graphical user interfaces (GUI), makefiles, protocols, specifications, database management code, data formats, utilities, methods of processing, software engines, platforms, encryption keys and other security features, 2D and 3D artwork, graphics, communications, animation, images, digital and/or audio clips or other content, (ii) contents of the "race", "psys", "gpl", "gpldata", "nl2", "nl2data", and "tools" Clearcase VOB's (Versioned Object Bases) from Assignor's source code control system, (iii) relevant instructions on building the object code thereof, all tools for creating cars, tracks, sounds and other individualized features, (iv) Documentation, (v) other data and/or information necessary to build the latest patched version of the Game and (vi) source code

REDACTED

and object code with respect to the foregoing, in each case,

REDACTED

2. **Assignment.** Effective on payment of the Purchase Price, Assignor hereby sells, assigns, conveys and otherwise transfers to Assignee all of Assignor's right, title and interest in and to the Game Technology and the Game IP (collectively, the "**Assets**").

REDACTED

REDACTED

8.  **Consideration.**  Assignee shall pay to Assignor the sum of (                    $
REDACTED        on the Effective Date of this Agreement (the "**Purchase Price**").  Assignee
will be responsible for all sales taxes, excise taxes, value added taxes and other sales type of
taxes (excluding taxes on Assignor's income) imposed by relevant tax authorities directly in
connection with the sale of the Assets to Assignee under this Agreement.

REDACTED                                        REDACTED

3

REDACTED

**12. Representations and Warranties of Sellers.**  Except as individually represented and warrantied below by Assignor or Parent, each of the Sellers hereby represents and warrants to Assignee, as of the Effective Date, as follows:

REDACTED

REDACTED

REDACTED

g.   **Sufficiency.**   The Game Technology and the collectively include all source code and tools required to build the object code of the latest patched version of the Game.

REDACTED

6

**REDACTED**

16. **Further Assurances.**   Assignor covenants and agrees that it will, upon the reasonable request of Assignee and at Assignee's cost and expense, execute and deliver, or cause to be executed or delivered, any and all documents provided by Assignee that may be necessary or desirable to perfect the sale, assignment, conveyance and transfer of the Assets hereunder.

**REDACTED**

**REDACTED**

9

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized officers.

| FIRST, L.L.C.  REDACTED  Name:  Title: | PAPYRUS DESIGN GROUP, INC.  Name:  Title: |
| REDACTED  REDACTED  Name:  Title: | SIERRA ON-LINE INC.  Name:  Title: |

05/25/2004 16:43 FAX 614 410 742 005   Case 1:05-cv-10432-DPW   Document 1-3   U.S. GAME SALES COO   Filed 03/22/2005   Page 8 of 8   Ø002

MAY-25-2004  17:22                                                                    P.02/02

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized officers.

| FIRST, L.L.C. | PAPYRUS DESIGN GROUP, INC. |
|---|---|
| | REDACTED |
| Name:<br>Title: | Name:<br>Title: |
| FMBC HOLDINGS, INC. | SIERRA ON-LINE INC. |
| | REDACTED |
| Name:<br>Title: | Name:<br>Title: |

PAGE 2/2 * RCVD AT 5/25/2004 2:16:10 PM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312600 * CSID: * DURATION (mm-ss):00-30

TOTAL P.02

EXHIBIT C

EULA

YOU SHOULD CAREFULLY READ THE FOLLOWING END USER LICENSE AGREEMENT BEFORE INSTALLING THIS SOFTWARE PROGRAM. BY INSTALLING OR OTHERWISE USING THE SOFTWARE PROGRAM, YOU AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT. IF YOU DO NOT AGREE TO THE TERMS OF THIS AGREEMENT, PROMPTLY RETURN THE UNUSED SOFTWARE PROGRAM TO THE PLACE OF PURCHASE OR CONTACT SIERRA ENTERTAINMENT, INC. CUSTOMER SERVICE AT (310) 649-8008 FOR A FULL REFUND OF THE PURCHASE PRICE WITHIN 30 DAYS OF THE ORIGINAL PURCHASE.

This software program (the "Program"), any printed materials, any on-line or electronic documentation, and any and all copies and derivative works of such software program (including materials created with a so called level editor, if included) and materials are the copyrighted work of Sierra Entertainment, Inc., a division of Vivendi Universal Games, Inc. and/or its wholly owned subsidiaries, or its suppliers.   All rights reserved, except as expressly stated herein.  All use of the Program is governed by the terms of this End User License Agreement provided below ("License Agreement"). The Program is solely for use by end users according to the terms of the License Agreement. Any use, reproduction or redistribution of the Program not in accordance with the terms of the License Agreement is expressly prohibited.
END USER LICENSE AGREEMENT

1. Limited Use License. Sierra Entertainment, Inc. ("Sierra ") hereby grants, and by installing the Program you thereby accept, a limited, non-exclusive license and right to install and use one (1) copy of the Program for your use on either a home, business or portable computer. In addition, the Program has a multi-player capability that allows users to utilize the Program over the Internet via Sierra's online game network Sierra.com. Use of the Program over Sierra.com is subject to your acceptance of Sierra.com's Terms of Use Agreement. Sierra Entertainment, Inc. reserves the right to update, modify or change the Sierra.com Terms of Use Agreement at any time. The Program is licensed, not sold. Your license confers no title or ownership in the Program.

2. Ownership. All title, ownership rights and intellectual property rights in and to the Program and any and all copies thereof (including but not limited to any titles, computer code, themes, objects, characters, character names, stories, dialog, catch phrases, locations, concepts, artwork, animations, sounds, musical compositions, audio-visual effects, methods of operation, moral rights, any related documentation, and "applets" incorporated into the Program) are owned by Sierra Entertainment, Inc. or its licensors. The Program is protected by the copyright laws of the United States, international copyright treaties and conventions and other laws. All rights are reserved. The Program contains certain licensed materials and Sierra 's licensors may protect their rights in the event of any violation of this Agreement.

3. Responsibilities of End User.
A. Subject to the Grant of License hereinabove, you may not, in whole or in part, copy, photocopy, reproduce, translate, reverse engineer, derive source code, modify, disassemble, decompile, create derivative works based on the Program, or remove any proprietary notices or labels on the Program without the prior consent, in writing, of Sierra.
B. The Program is licensed to you as a single product. Its component parts may not be separated for use on more than one computer.
C. You are entitled to use the Program for your own use, but you are not entitled to:
(i) sell, grant a security interest in or transfer reproductions of the Program to other parties in any way, nor to rent, lease or license the Program to others without the prior written consent of Sierra.
(ii) exploit the Program or any of its parts for any commercial purpose including, but not limited to, use at a cyber café, computer gaming center or any other location-based site. Sierra may offer a separate Site License Agreement to permit you to make the Program available for commercial use; contact Sierra for details;
(iii) host or provide matchmaking services for the Program or emulate or redirect the communication protocols used by Sierra in the network feature of the Program, through protocol emulation, tunneling, modifying or adding components to the

EULA

Program, use of a utility program or any other techniques now known or hereafter developed, for any purpose including, but not limited to network play over the Internet, network play utilizing commercial or non-commercial gaming networks or as part of content aggregation networks without the prior written consent of Sierra ; (iv) create or maintain, under any circumstance, more than one simultaneous connection to Sierra.com. All such connections to Sierra.com, whether created by the Program or by other tools and utilities, may only be made through methods and means expressly approved by Sierra Entertainment, Inc. Under no circumstances may you connect, or create tools that allow you to connect to Sierra.com's private binary interface or interfaces other than those explicitly provided by Sierra Entertainment, Inc. for public use.

4. Program Transfer. You may permanently transfer all of your rights under this License Agreement, provided the recipient agrees to the terms of this License Agreement and you agree to remove the Program from your home or portable computer.

5. Termination. This License Agreement is effective until terminated. You may terminate the License Agreement at any time by destroying the Program. Sierra may, at its discretion, terminate this License Agreement in the event that you fail to comply with the terms and conditions contained herein. In such event, you must immediately destroy the Program.

6. Export Controls. The Program may not be re-exported, downloaded or otherwise exported into (or to a national or resident of) any country to which the U.S. has embargoed goods, or to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Commerce Department's Table of Denial Orders. By installing the Program, you are agreeing to the foregoing and you are representing and warranting that you are not located in, under the control of, or a national or resident of any such country or on any such list.

7. Limited Warranty. Sierra expressly disclaims any warranty for the Program, Editor and Manual(s). The Program, Editor and Manual(s) are provided "as is" without warranty of any kind. either express or implied, including, without limitation, the implied warranties of merchantability, fitness for a particular purpose, or noninfringement. The entire risk arising out of use or performance of the Program and Manual(s) remains with the User, however Sierra warrants up to and including 90 days from the date of your purchase of the Program that the media containing the Program shall be free from defects in material and workmanship. In the event that the media proves to be defective during that time period, and upon presentation to Sierra of proof of purchase of the defective Program, Sierra will at its option 1) correct any defect, 2) provide you with a product of equal or lesser value, or 3) refund your money. Some states do not allow the exclusion or limitation of implied warranties or liability for incidental damages, so the above limitations may not apply to you.

8. Limitation of Liability. NEITHER SIERRA, VIVENDI UNIVERSAL INTERACTIVE PUBLISHING NORTH AMERICA, INC., ITS PARENT, SUBSIDIARIES OR AFFILIATES SHALL BE LIABLE IN ANY WAY FOR LOSS OR DAMAGE OF ANY KIND RESULTING FROM THE USE OF THE PROGRAM OR USE OF SIERRA ENTERTAINMENT, INC.'S ONLINE GAME NETWORK, SIERRA.COM INCLUDING, BUT NOT LIMITED TO, LOSS OF GOODWILL, WORK STOPPAGE, COMPUTER FAILURE OR MALFUNCTION, OR ANY AND ALL OTHER COMMERCIAL DAMAGES OR LOSSES. ANY WARRANTY AGAINST INFRINGEMENT THAT MAY BE PROVIDED IN SECTION 2-312(3) OF THE UNIFORM COMMERCIAL CODE AND/OR IN ANY OTHER COMPARABLE STATE STATUTE IS EXPRESSLY DISCLAIMED. FURTHER, SIERRA ENTERTAINMENT, INC. SHALL NOT BE LIABLE IN ANY WAY FOR THE LOSS OR DAMAGE TO PLAYER CHARACTERS, ACCOUNTS, STATISTICS OR USER PROFILE INFORMATION STORED ON SIERRA.COM. I UNDERSTAND AND ACKNOWLEDGE THAT SIERRA ENTERTAINMENT, INC. CANNOT AND WILL NOT BE RESPONSIBLE FOR ANY INTERRUPTIONS OF SERVICE ON SIERRA.COM INCLUDING, BUT NOT LIMITED TO ISP DISRUPTIONS, SOFTWARE OR HARDWARE FAILURES OR ANY OTHER EVENT WHICH MAY RESULT IN A LOSS OF DATA OR DISRUPTION OF SERVICE. Some states do not allow the exclusion or limitation of incidental or consequential damages, or allow limitations on how long an implied warranty lasts, so the above limitations may not apply.

EULA

9. Equitable Remedies. You hereby agree that Sierra would be irreparably damaged if the terms of this License Agreement were not specifically enforced, and therefore you agree that Sierra shall be entitled, without bond, other security, or proof of damages, to appropriate equitable remedies with respect to breaches of this License Agreement, in addition to such other remedies as Sierra may otherwise have available to it under applicable laws. In the event any litigation is brought by either party in connection with this License Agreement, the prevailing party in such litigation shall be entitled to recover from the other party all the costs, attorneys' fees and other expenses incurred by such prevailing party in the litigation.

10. Limitations on License.  Nothing in this License Agreement shall preclude you from making or authorizing the making of another copy or adaptation of the Program provided, however, that (1) such new copy or adaptation is created as an essential step in your utilization of the Program in accordance with the terms of this License Agreement and for NO OTHER PURPOSE; or (2) such new copy or adaptation is for archival purposes ONLY and all archival copies are destroyed in the event of your Transfer of the Program, the Termination of this Agreement or other circumstances under which your continued use of the Program ceases to be rightful.

11. Miscellaneous. This License Agreement shall be deemed to have been made and executed in the State of California and any dispute arising hereunder shall be resolved in accordance with the law of California. You agree that any claim asserted in any legal proceeding by one of the parties against the other shall be commenced and maintained in any state or federal court located in the State of California, County of Los Angeles, having subject matter jurisdiction with respect to the dispute between the parties. This License Agreement may be amended, altered or modified only by an instrument in writing, specifying such amendment, alteration or modification, executed by both parties. In the event that any provision of this License Agreement shall be held by a court or other tribunal of competent jurisdiction to be unenforceable, such provision will be enforced to the maximum extent permissible and the remaining portions of this License Agreement shall remain in full force and effect. This License Agreement constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements.

I hereby acknowledge that I have read and understand the foregoing License Agreement and agree that the action of installing the Program is an acknowledgment of my agreement to be bound by the terms and conditions of the License Agreement contained herein. I also acknowledge and agree that this License Agreement is the complete and exclusive statement of the agreement between Sierra and I and that the License Agreement supersedes any prior or contemporaneous agreement, either oral or written, and any other communications between Sierra and myself.

TPTCC GTS Car Physics

Installation:
-----------------------------------------------------
Unzip the TPTCC_GTS_Series_v2.0.exe into your Nascar Racing 2003 Season
directory. Double-click on the TPTCC_GTS_Series_v1.0.exe, and select the
"Make New EXE" button. This installer will allow the user of this software
the ability to copy your NR2003.exe (No_CD.exe will work), make the necessary
changes, and rename it to "NR2003_GTS_Touring_Series_v2.0.exe". You must
start NR2003 via the new executable for the new physics.

Included is a setup based on the GTS Car physics

Introduction:
-----------------------------------------------------
By installing and launching NR2003 via this executable, the physics of the
cars in the "TPTCC" mod (v2.0 or greater) will be altered. Instead of driving
a 8-cyl 600+ horse-power monster, you will be behind the wheel of a slightly
heavier weight car with more bottom-end torque but less overall horse power.
The net result is a car that is slower through the corners, and slightly
slower down the longer straights. All changes were made in an attempt to
replicate a front-engine, high-torque V8, production based car like a well
modified Dodge Viper or Corvette (Think Dale Jr's GTS Corvette in ALMS)

The changes are listed below:

500hp instead of 625hp (@ 70-clear)
Lower RPM range power-band (5000-6000 estimated)
Faster horse-power drop off once out of power band
6900 RPM red-line
2850lb instead of 2800lb
20 gallon fuel capacity
Minimum front/rear weight ratio 51% to front (front engine)
Less ballast to adjust left/right
Spoiler minimum of 60 degrees, maximum of 75 degrees (hi-drag)
Front and Rear springs have a lower minimum spring rate
Lower Front and Rear ride-heights
Rear Camber is adjustable in increments of .1 degree up to +/- 3 degrees
Steering Ratio now allows settings of 10:1 or greater

The GTS Physics were created for the purpose to race online with the TPTCC "TA"
and the TPTCC "Touring Car" physics via IP servers. This allows for multi-class
racing online with three seperate physics on the track at the same time. For
more information regarding multi-class online endurance racing, please visit
http://www.tmcarthur.net/enduro.htm or
http://sports.groups.yahoo.com/group/tptcc-endurance/

Warnings:
-----------------------------------------------------
You will not be able to join servers that are posted on the Sierra listings.
A server may only be joined via IP connection. The new phyics are only
useable in the TPTCC mod, no others. The server does not need to be launched
via this executable.

The user of this software takes all responsibility of creating a copy of the
Nascar Racing 2003 Season executable file and the changes made to the file.

Special thanks to:
-----------------------------------------------------
David Boyle, just because he is the man!
The US Pits (www.theuspits.com)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)  First, LLC  v. Timothy McArthur

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

    ___    I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    _X_    II.    195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121
                740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

    ___    III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

    ___    IV.    220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

    ___    V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
  None

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

    YES ☐    NO ☒

  If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES ☐    NO ☒

    A.    If yes, in which division do all of the non-governmental parties reside?

    Eastern Division ☐    Central Division ☐    Western Division ☐

    B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

    Eastern Division ☒    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

    YES ☐    NO ☒

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME    Irwin B. Schwartz

ADDRESS    Petrie Schwartz LLP, 500 Boylston Street, Suite 1860, Boston, MA 02116

TELEPHONE NO.    617-421-1800 (Ext. 32)

(CategoryForm.wpd - 2/15/05)

%JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

First, LLC, a Delaware Limited Liability Corporation

**(b)** County of Residence of First Listed Plaintiff    **Middlesex**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Irwin B. Schwartz, Esquire, Petrie Schwartz LLP, 500 Boylston Street, Suite 1860, Boston, MA 02116 (617-421-1800 (Ext. 32))

## DEFENDANTS

McArthur, Timothy

05 Mar 22 P 3 39

County of Residence of First Listed Defendant    Contra Costa, California
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

05 10544 JLT

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question (U.S. Government Not a Party)
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 630 Liquor Laws | ☒ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 660 Occupational Safety/Health | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | **PERSONAL INJURY** | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 362 Personal Injury - Med. Malpractice | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 365 Personal Injury - Product Liability | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | **PERSONAL PROPERTY** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 370 Other Fraud | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 371 Truth in Lending | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 380 Other Personal Property Damage | | | ☐ 950 Constitutionality of State Statutes |
| **CIVIL RIGHTS** | ☐ 385 Property Damage Product Liability | | | |
| ☐ 441 Voting | **PRISONER PETITIONS** | | | |
| ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | | | |
| ☐ 444 Welfare | ☐ 530 General | | | |
| ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | | |
| ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | | | |
| ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from another district (specify)
- ☐ 6   Multidistrict Litigation
- ☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
17 U.S.C. §501

Brief description of cause:
Actual and threatened violation of Plaintiff's Copyrights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE                    DOCKET NUMBER

DATE    03/21/2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____